# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

DONALD ARMOUR,                    )
                                  )
    Plaintiff,           )
                                  )
v.                                )      CAUSE NO.: 2:04-CV-32-PRC
                                  )
CITY OF GARY,                     )
                                  )
    Defendant.           )

## OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [DE 49], filed by the

Defendant, City of Gary (hereinafter "City") on February 11, 2006.  For the following reasons, the

Defendant's Motion for Summary Judgment is **GRANTED**.

## PROCEDURAL BACKGROUND

The Plaintiff, Donald Armour, filed a Charge of Discrimination with the EEOC on April 24,

2003.  The EEOC issued a notice of right-to-sue on October 28, 2003.  On January 28, 2004,

Armour, proceeding *pro se*, presented a claim to this Court together with a motion for leave to

proceed *in forma pauperis*.  District Court Judge Phillip P. Simon granted Armour's Motion for

Leave to Proceed *in forma pauperis* on April 14, 2004.  The Clerk entered an Order granting

Armour's pauper status and filed Armour's Complaint on April 15, 2004.

On May 10, 2004, the City filed its Amended Answer and Affirmative Defenses.  Also on

May 10, 2004, the City filed a motion to dismiss for failure to timely file Complaint.  On July 21,

2004, Judge Simon issued an Order denying the City's motion to dismiss.

On August 4, 2004, the parties consented to have this case assigned to the undersigned

Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Also on August 4, 2004, Armour filed a motion to appoint counsel. The Court denied without prejudice the motion to appoint counsel on August 9, 2004, stating that a renewed motion and attached questionnaire must be filed by September 3, 2004.

On August 15, 2005, Armour filed a motion for leave to file an amended complaint. On September 9, 2005, the Court granted Armour's motion and on September 12, 2005, Armour filed an Amended Complaint. In his Amended Complaint, Armour alleges discrimination based on disability in violation of the Americans with Disabilities Act.

On December 5, 2005, Armour filed a motion for default judgment based on the City's failure to file an answer to his Amended Complaint. On December 15, 2005, the City filed a response in opposition to Armour's motion for default judgment as well as a motion for leave to file an answer to Armour's Amended Complaint. On June 7, 2006, the Court denied Armour's motion for default judgment and granted the City's motion for leave to file an answer to Armour's Amended Complaint.

On February 11, 2006, the Defendant filed a motion for summary judgment. On March 27, 2006, the Plaintiff filed a response in opposition to the Defendant's motion for summary judgment. The Defendant did not file a reply brief in support of its motion for summary judgment.

Since the parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. 636(c).

## FACTUAL BACKGROUND

The Plaintiff, Donald Armour, is fifty-five years old. The Defendant, the City of Gary ("the City"), is a municipal organization with several departments, including the recycling department.

Armour began his employment with the City on April 25, 1995, as a Recycle Specialist, his status being a full time temporary worker for thirty days. It appears that Armour served his thirty day contract and was then re-hired four months later on September 21, 1995, as a Recycling Picker; however, he was terminated due to budget constraints on June 20, 1997. On July 21, 1997, the City restarted the recycling program and Armour returned to his former position as a Recycling Picker, again as a full time temporary worker. Late in 1997, Armour was promoted to the position of Driver/laborer. As a Driver/laborer, Armour's employment duties included driving a recycle/one ton truck on assigned routes of various locations, curbside collections of recyclable items and yard waste, and performing other duties as assigned. The job description requires a Driver/laborer to have the physical ability to perform outside work and an education equivalent to that of a high school diploma. On August 4, 1998, Armour became a full time permanent employee of the City.

Armour testified that the City allowed personnel to work in different departments provided that they worked in the same position; thus, Armour periodically worked as a Driver/laborer in both the City's Recycling and Board-up departments. At all relevant times, Charles Donaldson was the Director of the Recycling Department and Charles Cox was the Supervisor of the Recycling Department. In 1998, Maime Hudson became the Assistant Director of the Recycling Department and Armour's supervisor. Also, during the times Armour worked in the Board up Department, Levi Richards supervised him.

On January 22, 2001, while working in the Board up department, Armour slipped and fell on a patch of ice. On May 15, 2001, Armour began receiving workers' compensation disability payments for L4-L5 and L5-S1 disc herniations he suffered due to the fall. Armor underwent two back surgeries, both performed by Dr. Anthony Anigbo. Dr. Anigbo released Armour on February 7, 2002, to return to work effective February 11, 2002, with (I) a ten pound lifting restriction; (ii) a pulling, pushing, and shoving restriction; (iii) a no long term standing restriction; and (iv) a prescription for use of a cane for assistance. On February 11, 2002, the City terminated Armour's temporary total disability ("TTD") benefits.

Due to Armour's physical restrictions, on February 13, 2002, Armour was asked to deliver recycling bins to various locations in the City.[1] The delivery took Armour two days to complete. On February 18, 2002, the City gave Armour an assignment to use a picker device to pick up recyclable items from various vacant lots in Gary. Additionally, Hudson instructed Armour to pick up only three to four items in each bin in order to remain in line with the ten pound weight restriction. Hudson further told Armour that other recycling department employees would pick up the bins and thus instructed Armour not to lift the bins into the back of the dump truck that he would be driving to the various lots.

Armour testified that the job required him to walk around in grassy, wooded areas to pick up cans and other trash. Armour further testified that Hudson told him to go home if he could not perform the job, and he did so on one occasion. In February of 2002, the City hired Atlas Investigations to complete a workers' compensation surveillance report on Armour. The summary

___

[1]The facts in this paragraph are taken from Def. Br., Exh. 1, a March 18, 2002 letter from Tim Cisney to the City. Cisney was an attorney for Frontier Adjusters, a private company utilized by the City to manage its workers' compensation claims. Neither the City nor Armour referenced this letter; however, the Court finds the letter material due to its illustration of the efforts taken by the City to provide Armour with alternative, light duty employment positions.

of the report included descriptions of Armour walking without his prescribed cane, lifting groceries and other items, standing, driving and entering and exiting a vehicle. In her deposition, Hudson testified that she regularly saw Armour dancing in a nightclub in the City. Armour also testified to occasionally dancing in a nightclub, The Elbow Room, after his injury and surgeries.

On February 23, 2002, Dr. Anigbo provided Armour with another work restriction stating that he could only work on level ground. The same day, Armour presented the restriction to both Donaldson and Hudson. Armour was told that the City had no positions to accommodate him and he was asked to return home.

On April 22, 2002, Frontier Adjusters, the company hired by the City to handle its workers' compensation claims, advised the City in a report that Armour should be restricted in "all lifting and carrying tasks; elevated lifting or standing, work; positional activities that include bending, standing, walking, kneeling, crouching, squatting and crawling; ladder and stair use," and concluded, "In essence there is very little that Mr. Armour can do in his current capacity as a laborer for the City of Gary." Pl. Br., Exh. H.

On May 29, 2002, Armour filed a Petition for Bad Faith with the City's Workers' Compensation Board. Armour testified that at the Bad Faith Hearing, Hudson informed the Board that the City had a new position available for Armour. Beginning in June of 2002, Armour was assigned to work in a compost yard as a Yard Monitor. The yard was previously maintained by a private agency, Fertile Earth; however, in June of 2002, the contract with Fertile Earth ended and the City began maintaining the site. The principle functions of the Yard Monitor position included monitoring yard waste, keeping monthly records of truckloads brought into the yard, and monitoring compliance to keep non-yard waste items out of the area.

On April 1, 2003, the City issued a yard monitoring contract to Enterprise Properties and eliminated Armour's temporary position of Yard Monitor. The City then requested that Armour return to his previous job as a Driver/laborer with the Recycling Department. Armour refused to return to his position as Driver/laborer with the Recycling department; instead, requesting several accommodations. First, he requested an additional laborer to ride in his truck, who would bend and lift the bins while Armour drove. Second, Armour requested a position as a painter in the Board-up department. Finally, Armour requested that a fellow employee be moved from a position as a security guard, so that Armour could have the employee's job.

The City found these accommodation requests to be unreasonable, and in a letter dated May 19, 2003, the City stated that they had no light duty positions to offer Armour and that he was terminated effective April 1, 2003. The City contended that the termination was an administrative decision implemented uniformly throughout the department based solely on Armour's refusal to return to the position of Driver/laborer. Upon his termination, Armour accepted a part-time job at a Value City Department store working in the Men's Suits Department. Armour was also approved for Social Security Disability beginning August 1, 2005, because of degenerative disc disease.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party

cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443. When considering cross-motions for summary judgment, "our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Allen v. City of Chicago*, 351 F.3d 306, 311 (7th Cir. 2003) (citations and internal quotation marks omitted).

## ANALYSIS

In his Amended Complaint, Armour alleges that the City violated disability law when it terminated him and failed to accommodate his needs to lift no more than ten pounds, to refrain from

pushing, pulling or shoving, to sit periodically throughout the work day, to use a cane for assistance, and to walk only on level ground. In its motion for summary judgment, the City argues that its business decision to terminate Armour did not violate disability discrimination law because Armour did not have a "disability" under the Americans With Disabilities Act ("ADA") and the City did not fail to accommodate him.

## I. The ADA Claim

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), or "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). Under the ADA, there are two distinct categories of disability discrimination: failure to accommodate claims and disparate treatment claims. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997).

A plaintiff in an employment discrimination case may prove discrimination through either direct or indirect evidence. *See Volovsek v. Wisconsin Dept. Of Agr., Trade and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003). Regardless of the method, the burden is on the plaintiff to demonstrate that genuine issues exist for trial. *See Markel v. Bd. of Regents of the Univ. of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002). The direct method can be based on either direct or circumstantial evidence. *See Volovsek*, 344 F.3d at 689. As Armour presents no direct evidence of employment discrimination by the City, the Court will analyze his claim based on indirect

evidence under the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the indirect method set forth in *McDonnell Douglas*, Armour must first establish a prima facie case of discrimination. *Id.* To establish a prima facie case, a plaintiff must show: "(1) that [he] is disabled within the meaning of the ADA, (2) that [his] work performance met [his] employer's legitimate expectations, (3) that [he] was discharged [or was subjected to some other adverse employment action], and (4) that the circumstances surrounding [the adverse action] indicate that it is more likely than not that [his] disability was the reason for these adverse actions." *Weigel v. Target Stores*, 122 F.3d 461, 465 (7th Cir. 1997) (quoting *Leffel v. Valley Fin. Serv.*, 113 F.3d 787, 794 (7th Cir. 1997)).

If Armour fails to establish even a single prong of the prima facie case, the claim cannot survive summary judgment. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). However, if Armour establishes a prima facie case for disability discrimination, an inference of discrimination exists and the burden of production shifts to the City to articulate a legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-803; *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

Once the City provides a legitimate explanation, the inference of discrimination evaporates and the burden shifts back to Armour to prove that the proffered justification is pretextual. *Traylor*, 295 F.3d at 788. To establish pretext, Armour must prove, by a preponderance of the evidence, either that the City was motivated by a discriminatory reason or that the City's proffered reason is unworthy of credence, in other words, a lie. *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

143 (2000). A plaintiff can establish pretext by demonstrating that the proffered reason (I) has no basis in fact, (ii) did not actually motivate the adverse employment action, or (iii) is insufficient to motivate the adverse employment action. *Velasco v. Illinois Dept. of Human Serv.*, 246 F.3d 1010, 1017 (7th Cir. 2001); *Cliff v. Board of Sch. Comm'rs of City of Indianapolis, Ind.*, 42 F.3d 403, 412 (7th Cir. 1994).

## A. Disability Under the ADA

No matter the type of discrimination alleged–either disparate treatment or failure to provide a reasonable accommodation–in order to establish a prima facie case, the ADA requires that a plaintiff must first establish that he was "a qualified individual with a disability." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) ("The ADA proscribes discrimination against only 'qualified individual[s] with a disability'") (quoting 42 U.S.C. § 12112(a)); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524-25 (7th Cir. 1996) (holding there can be no recovery under the ADA unless plaintiff establishes that she is a qualified individual with a disability).

Under the ADA, "disability" may be demonstrated by one of three methods: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

## 1. Substantial Limitation Under the ADA

With regard to the first method of demonstrating a disability, whether an individual has "a physical or mental impairment that substantially limits one or more of the major life activities," the Supreme Court has instructed courts to address the following:

> First, we consider whether [the individual's claimed disability] was a physical impairment. Second, we identify the life activity upon which [the individual] relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). EEOC regulations interpreting the ADA define "major life activities" by providing an illustrative, non-exhaustive list which includes "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); *see also Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683-84 (7th Cir. 2000).

"Substantially limits" means that a person is either unable to perform a major life activity or is significantly restricted as to the condition, manner, or duration under which the individual can perform the major life activity as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1); *Sinkler*, 209 F.3d at 685. In determining whether an impairment can be said to "substantially limit" the major life activity of the individual, a court ought to consider the nature and severity of the limitations, the actual or expected duration of the impairment, and the actual or anticipated permanent or long-term impact of the impairment. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 n.3 (7th Cir. 1998) (citing 29 C.F.R. § 1630.2(j)(2)). The ADA "addresses substantial limitations on major life activities, not utter inabilities." *Bragdon*, 524 U.S. at 641.

In this case, the first issue the Court must address is whether Armour is "disabled" under the

ADA because of his herniated discs. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). Not all plaintiffs with health conditions have a "disability" within the meaning of the ADA. *See Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997) ("The Act is not a general protection of medically afflicted persons"). "Many physical impairments do not impact an individual's life to the degree that they constitute disabling impairments under the ADA." 29 C.F.R. app § 1630(2)(j); *Hamm v. Runyon*, 51 F.3d 721, 729 (7th Cir. 1995). In order to substantially limit a major life activity under the ADA, the impairment must be significant. *See Byrne v. Board of Educ., School of West,* 979 F.2d 560, 564 (7th Cir. 1992). According to EEOC regulations, courts are first to determine if "an individual's ability is substantially limited with respect to any other major life activity before considering the individual's ability to perform the major life activity of working." 29 C.F.R. app. § 1630.20(j).

Armour claims that his herniated disc condition substantially limited the major life activities of walking, standing, bending,[2] and lifting. Specifically, Armour states that because (1) Dr. Anigbo prescribed a cane to assist him in walking; (2) his back condition affected his ability to walk to the extent that his doctor advised the City he could not work on uneven ground; and (3) Dr. Anigbo restricted the length of time Armour could stand, he was limited in the major life activities of walking and standing.

Even assuming the truth of all of the above physical limitations and restrictions, the Court

---

[2] Armour asserts bending as a major life activity; however, he provides no support for this assertion. Dr. Anigbo's restrictions do not mention bending in any way and Armour provided no other evidence to support this assertion. Therefore, the Court finds that Armour's argument that his herniated disc condition substantially limited the major life activity of bending is waived. *See Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 172 n. 1 (7th Cir. 1996) (stating that an argument that is not developed in any meaningful way is waived).

finds that Armour's herniated discs did not substantially affect the major life activities of walking and standing. Armour was not substantially limited in the life activity of walking, because he was generally able to walk and stand. *See Scheerer v. Potter,* 443 F.3d 916, 920 (7th Cir. 2006) (holding that even though Plaintiff relied on a cumbersome protective boot to cover diabetic ulcers while working, his ability to walk and stand generally was not affected and no substantial limitation occurred). In contrast, in *E.E.O.C. v. Sears Roebuck, Inc.*, the Seventh Circuit held that a jury could reasonably conclude that a woman's inability to walk the equivalent of one city block without her right leg and feet becoming numb constituted a substantial limitation in the major life activity of walking. 417 F.3d 789, 802 (7th Cir. 2005). Specifically, "[the plaintiff] would feel as though she had to take both of her hands and lift up her leg to take one step at a time. Sometimes, [the plaintiff] would doubt whether she could make it out of the store safely and would hold on to the wall for support." *Id.*

Unlike the plaintiff in *Sears Roebuck*, Armour has not illustrated that he was substantially limited in his ability to walk or stand. In fact, Amour accepted a part-time job at Value City to support himself, a job that Armour testified required walking and standing. Also, the release by Dr. Anigbo limited only long term standing and, subsequently, walking on uneven surfaces. Dr. Anigbo made no restrictions on walking generally nor did he define "long term." Armour's ability to walk and stand generally were further evidenced by the workers' compensation report conducted in February of 2002, in which he was photographed walking, bending, entering and exiting automobiles, and walking without the use of a cane. Finally, Armour himself testified to occasionally dancing at The Elbow Room after his injury. Accordingly, the Court finds that Armour's major life activities of walking and standing were not substantially limited under the

ADA.

Armour further submits that his herniated discs limited the major life activity of lifting, as evidenced by his 10 pound lifting restriction. The Seventh Circuit has held that a plaintiff's lifting restriction does not constitute a significant barrier to employment. *See Contreras v. Suncast Corp*, 237 F.3d 756, 763 (7th Cir. 2001) (holding that a forty-five pound lifting restriction does not amount to a substantial limitation of the major life activity of working); *See also Duffin v. Fed. Express Corp*., No. 95 C 3723, 1997 WL 208428, at *3 (N.D.Ill. Apr. 22, 1997) (holding that there is no ADA protection for a courier's lifting restriction of twenty-five pounds); *Czopek v. General Elec. Co.*, No. 93 C 7664, 1995 WL 374036, at *2-3 (N.D.Ill. Jun. 21, 1995) (holding that, even with a twenty pound lifting restriction, plaintiff was not substantially limited in his ability to work and employer did not regard plaintiff as disabled).

In contrast to the plaintiffs' claims in the above cases, Armour does not assert that his lifting restriction constituted a substantial limitation on his ability to work. Instead, he argues that lifting, in itself, is a major life activity, which was substantially limited by his herniated disc condition. Although the Seventh Circuit has not specifically addressed whether lifting is a major life activity, other courts that have addressed the issue have generally found that lifting can be considered a major life activity only when the lifting limitation is such that it hinders routine lifting necessary for daily life activities. *See e.g., Sharrod v. American Airlines, Inc.,* 132 F.3d 1112, 1120 (5th Cir. 1998) (upholding district court's grant of summary judgment where plaintiff argued that her back injury limited her major life activity of lifting, but only showed a limitation on heavy lifting, not routine lifting necessary for daily life activities); *Michios v. Rooms to Go Miami, Corp*, No. 96-2658, 1997 WL 813004 at *3 (S.D.Fla., 1997) (holding that a restriction on heavy lifting does not substantially

limit a major life activity).

Thus, even if the Court were to hold that lifting is a major life activity, Armour would still have the burden of proving that he was substantially limited in routine lifting necessary for daily life activities. Armour has not met this burden. The Atlas Investigations' surveillance report describes Armour, on numerous occasions, carrying various groceries, personal items, and conducting his daily life activities with little inconvenience. Armour has not presented any evidence to the contrary. The Court holds that Armour was not substantially limited in the major life activity of lifting.

In viewing the three factors necessary to determine whether an impairment is substantially limiting–the nature and severity of the impairment, its duration, and the long-term effects–the Court finds that Armour's herniated disc condition did not substantially limit his ability to walk, stand, or lift. Further, Armour has not alleged or demonstrated that his herniated disc significantly interfered with any of the other recognized major life activities, including caring for himself, performing manual tasks, seeing, hearing, speaking , breathing, or working.[3] Under the ADA, even a serious affliction such as a herniated disc does not automatically equate with a disability. Armour has not demonstrated to the Court that he is disabled under the ADA.[4]

---

[3] Armour does not allege in his Amended Complaint or in his response in opposition to the City's motion for summary judgment that his impairment substantially limited the major life activity of working. Consequently, Armour has waived any such argument. See *Sanchez v. Henderson*, 188 F.3d 740, 746 n. 3 (7th Cir.1999) (stating that failure to mention theories in argument section of brief resulted in waiver), cert. denied, 528 U.S. 1173 (2000); *see also Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 172  n. 1 (7th Cir. 1996) (stating that an argument that is not developed in any meaningful way is waived).

[4] Since Armour has failed to show that he labors under a disability, he cannot establish a "record of" a disability under the ADA. *See White v. Boehringer Mannheim Corporation*, 28 F. Supp. 2d 527, 539  (S.D. Ind. 1998 ) (plaintiff must show disability under ADA before a "record of" claim can be established).

## 2. "Regarded As" Having an Impairment Under the ADA

As discussed, a plaintiff can demonstrate that he is disabled under the ADA by showing that he was regarded as having an impairment. 42 U.S.C. § 12102(2). The purpose of the "regarded as" definition of a disability is to "cover individuals 'rejected from a job because of the myths, fears and stereotypes associated with disabilities.'" *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 489-90 (1999) (quoting 29 C.F.R. 1630, App. § 1630.2 (/)). An individual may prove a "regarded as" claim by showing that either: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Id.* Having previously found that Armour failed to establish that his disc condition constituted a substantially limiting disability under the ADA, the Court will now analyze whether the City regarded Armour as having an impairment.

In order to establish a "regarded as" claim, it is not enough for a plaintiff to show that the employer knew of the plaintiff's impairment. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001). The plaintiff must also show that the employer believed that one or more of the plaintiff's major life activities were substantially limited by the plaintiff's impairment. *Id. See also Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998) (stating that "to be 'substantial,' a limitation on the ability to work must be one that affects the plaintiff's ability to perform a class or range of jobs before it qualifies as a disabling limitation under the ADA . . . . the employer's perception of the plaintiff's inability to work must have a comparable breadth."). The plaintiff must select the major life activities that he will attempt to prove the employer regarded as being substantially limited by his impairment. *Amadio,* 238 F.3d at 925.

Armour alleges that the City was aware of his substantial impairment and its affect on "his ability to walk and to stand for prolonged periods, to require him to need a cane, as well as to bend and to lift."  In viewing the facts in the light most favorable to Armour, the Court finds that a trier of fact could find that the City perceived Armour as having an impairment that substantially limited him in the major life activity of walking or lifting which prevented him from working as a Driver/laborer for the City.  First, after Armour's injury, the City placed him on TTD and searched for possible light duty work Armour could perform.  Second, the City assigned him to two different jobs (as a Picker with special light lifting instructions and as a Yard Monitor) based on his physical limitations.  Third, Frontier Adjusters, a company who had been chosen by the City itself to evaluate Armour ability to work with the company, concluded that, "there [was] very little that Mr. Armour [could] do...in his (then) current capacity as a laborer for the City of Gary."  It was only after exhausting all of the above alternatives that the City terminated Armour.  These facts are enough to create a genuine issue of material fact as to whether the City regarded Armour as disabled.  *See Best v. Shell Oil Co.*, 107 F.3d 544, 548-549 (7th Cir. 1997) (holding that a company placing an employee on long term disability and searching for a non-driving job was enough to establish a genuine issue of material fact as to whether the company regarded the employee as disabled).  Thus, the Court  assumes for summary judgment purposes that a reasonable trier of fact could find that the City regarded Armour as disabled within the meaning of the ADA.

### B. Qualified Individual With a Disability Under the ADA

Even assuming that Armour had a disability under the ADA, he must next fit within the statutory definition of a "*qualified* individual with a disability."  42 U.S.C. § 12111(8) (emphasis

added). The first step in determining whether Armour was a "qualified individual with a disability" requires the Court to determine whether Armour satisfied the prerequisites of the Driver/laborer position, in terms of skills or experience. If the Court finds that he did, then it must be determined whether Armour could perform the essential functions of the job with or without a reasonable accommodation. *See Peters v. City of Mauston* 311 F.3d 835, 845 (7th Cir. 2002); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir.1996).

The City does not argue that Armour was unqualified for the position; thus, the only remaining issue is whether Armour could perform the essential functions of the Driver/laborer position with or without reasonable accommodation. The City asserts that bending, lifting, walking, and driving were all essential functions of Armour's job. Armour contends that "driving" is the only essential function of the Driver/laborer position. The ADA mandates that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Although bending, lifting, and walking are not specifically mentioned in the printed job description, the description does provide that "Driver/laborers may be assigned various non-skilled duties," and that another function of the position includes "curbside collections of recyclable items and yard waste." The Court also finds that the very title of the position, Driver/laborer, suggests that the job requires more than simply driving.

The Seventh Circuit gives great weight to an employer's judgment as to what constitutes an essential function of a job. *See DePaoli v. Abbott Labs.,* 140 F.3d 668, 674 (7th Cir.1998) (holding that the Seventh Circuit does not second guess an employer's judgment as to what constitutes an

essential function of a job); *see also Peters*, 311 F.3d at 845 ("Because we do not second-guess the employer's judgment as to the essential functions, we affirm the district court's determination that lifting, heavy or otherwise, is an essential function of the Operator's job"). *See also Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir. 2001) ("an essential function need not encompass the majority of an employee's time, or even a significant quantity of time, to be essential").

In *Peters*, the Seventh Circuit held that lifting was an essential function of an Operator's job, because it was one of the daily operational and construction tasks assigned to laborers by the City of Mauston. *Peters*, 311 F.3d at 845. In this case, the City determined that the Driver/laborer position included the daily tasks of bending, lifting, walking, and driving. This determination alone is sufficient evidence that these tasks are essential functions. In addition, Armour testified that his responsibilities as a Driver/laborer included "picking up bins on the driver's side." Def. Br., Exh. R. Finally, as a requested accommodation, Armour asked that he be given a second laborer to pick up all of the recycling bins, further establishing that Armour was aware his position required bending, lifting, and walking. Thus, the Court finds that bending, lifting, walking, and driving were all essential functions of the Driver/laborer position

The Court must now determine if Armour's requested accommodations were reasonable in light of the essential functions of the Driver/laborer position. Armour first requested an additional laborer to ride in his truck who would bend and lift the bins while Armour drove. The Seventh Circuit has repeatedly held that a request for a second person to conduct an essential function of a job constitutes an unreasonable accommodation. *See Peters*, 311 F.3d at 845 (holding such request unreasonable because it required another person to perform an essential function of an employee's job); *Hansen v. Henderson*, 233 F.3d 521, 523-24 (7th Cir.2000) (stating that an employer need not

20

create a new job or provide a helper as an accommodation to a disabled employee); *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir.1997) ("to accommodate him [the employer] would have to hire someone else to help perform some duties. That clearly was beyond a reasonable accommodation."); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir.1996) ("hiring a helper to perform the overhead work would mean the helper would de facto perform [the] job. We cannot agree that [an employee] would be performing the essential functions of his job with a helper"). Therefore, because Armour's first request was a second person to bend, lift, and walk, all activities which were essential functions of the Driver/laborer position, the Court holds that Armour's requested accommodation was unreasonable.

Armour also requested that he be transferred to a painting position in the Board-up department, which position included walking and bending. The ADA may require an employer to "ascertain whether he has some job that the employee might be able to fill." *Miller v. Illinois Dep't of Corrections,* 107 F.3d 483, 487 (7th Cir.1997). *See also Dalton v. Subaru-Isuzu Automotive, Inc.* 141 F.3d 667, 678 (7th Cir. 1998); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 913 (7th Cir.1996) (Cudahy, J., and Rovner, J., concurring) (noting that "in an appropriate case, the ADA may require the employer to transfer the employee to another available job for which he or she is qualified. Unfortunately for [the plaintiff], no positions were available at the time for which he was able to perform the essential functions with or without reasonable accommodation."). However, the ADA provides that an employer need not grant an employee's request for an accommodation that would be an "inefficacious change." *Vande Zande v. Wisc. Dep't. Of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995).

Armour has not provided any evidence that he was qualified to perform the essential

functions of a painting position with the Board-up department. In fact, Armour's doctors' limitations on his walking, bending, and lifting are evidence that Armour was not qualified for the painter position, since the City stated that the position included such activities. Further, Armour provided no evidence that he ever worked as a painter, only that a painting position was available. The Court finds that the requested transfer to a painting position in the Board-up department was unreasonable as Armour was not qualified to perform the essential functions of the job.

Finally, Armour requested a position as a security guard, an accommodation that would have required moving another incumbent employee from that position. In *Gile v. United Airlines, Inc.,* the Seventh Circuit held that an employer has no duty to "bump" an incumbent from a position or create a "new" position just to accommodate the request of a disabled employee. 95 F.3d 492, 499 (7th Cir. 1996). Thus, this requested accommodation was also unreasonable. Accordingly, the Court finds that Armour failed to request any reasonable accommodation and thus he is not a "qualified individual with a disability" under the ADA.

Based on the foregoing, Armour has not satisfied his burden of demonstrating that he was a qualified individual with a disability under the ADA and, consequently, he has failed to establish a prima facie case of disability discrimination. Therefore, summary judgment is appropriate on Armour's ADA claim.


**CONCLUSION**

The Court has determined that Armour has not satisfied his burden to prove a *prima facie* case of disability discrimination. Accordingly, the Court hereby **GRANTS** Defendant City of Gary's Motion for Summary Judgment [DE 49]. The Court **ORDERS** the Clerk of the Court to

enter judgment in favor of the Defendant, City of Gary, and against the Plaintiff, Donald Armour, on all counts.

All pretrial and trial settings are **VACATED**.

SO ORDERED this 14th day of June, 2006.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record